**In re CAPTRAN CREDITORS TRUST, Debtor.**

**Bankruptcy No. 85–45–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 15, 1989.

See also, Bkrtcy., 94 B.R. 769.

Malka Isaak, Tampa, Fla., for debtor.

Jeffrey W. Warren, Attorney, Tampa, Fla., for Joan Smoak and George Mills.

## ORDER ON OBJECTION TO CLAIMS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are two objections filed by Captran Creditors Trust (Debtor) to the allowability of the claims of George E. Mills, Jr. (Mills), Claim No. 18 filed in the amount of $3,499 based on professional services allegedly rendered to the Debtor, and Claim No. 20 filed by Joan Smoak (Smoak) in the amount of $800 also based on professional services allegedly rendered by Ms. Smoak to the Debtor.

The objection to the claim of Mills is based on the contention of the Debtor first that the accounting services allegedly rendered by Mills were rendered to the former Trustees of the Debtor, and not to the Debtor; second, the report prepared by Mills was done intentionally incorrectly in order to facilitate the former Trustees to cover up their own malfeasance and misfeasance and was intended to assist several entities to cover up a misuse of escrow funds received by the Debtor. The objection to the claim of Ms. Smoak basically reasserts the allegation set forth in an objection filed to the claim of Mr. Mills.

On October 14, 1988, the Debtor filed an amended objection in which the Debtor merely stated that it is not indebted to the Claimant in any amount. However, the amended Objection is coupled with a counterclaim based on the right of set-off, the details of which are set forth in a complaint filed by the Debtor against several entities including the claimants, Mr. Mills and Ms. Joan Smoak.

Although the clarity of the objections filed by the Debtor leaves a lot to be desired, it developed at the final evidentiary hearing that it is the Debtor's position first that the services rendered by Mr. Mills and Ms. Smoak were not rendered to the Debtor, but to the former Trustees of the Debtor; second, in any event, the services rendered by Mr. Mills were totally worthless and furnished no benefit to the Debtor, and, therefore, his claim should not be allowed for failure of consideration. While the Debtor also attempted to inject sundry and various claims asserted originally in its counterclaim, and in its Complaint filed against the Claimants and others, Adversary No. 88–460, the matter was only tried on two issues: 1) were the services rendered by Mr. Mills and Smoak ever authorized by the Debtor and actually rendered to the Debtor; and, 2) whether or not Mills is entitled to any compensation at all due to total failure of consideration.

In order to put the issues in proper focus, a brief recap of the historical background of this Chapter 11 case and its predecessor Chapter 11 case should be helpful.

Captran Resorts International, Inc., (CRI), is a Florida corporation and was at the time relevant engaged in developing various and sundry projects in southwest Florida for the purpose of selling time-share units in the facilities which either have already been constructed or were in the process of construction. On July 16, 1982, CRI filed its Voluntary Petition for Relief under Chapter 11, having run into serious financial difficulties. Its efforts to obtain rehabilitation under Chapter 11 of the Bankruptcy Code never reached fruition. Even before CRI undertook first steps toward reorganization, it entered into an agreement with its creditors for the

purpose of conveying all, or practically all of its assets to a newly created entity, Captran Creditors Trust (Trust). According to the trust agreement (Claimants' Exh. No. 2A), Mr. David W. McConnell (McConnell) and Mr. Gerard McHale, Jr. (McHale), were appointed as Trustees for this newly created Trust and were charged with the duty of liquidating the assets of CRI which, as noted above, were to be conveyed into the trust. Pursuant to the terms of the Agreement, the assets specified in the Trust instrument of CRI were, in fact, transferred into the Trust.

On January 9, 1985, North American Title Insurance Agency, Inc., (NATIA), George E. Mills (Mills) and Joan Smoak (Smoak) filed an Involuntary Petition under Chapter 11 against the Trust, alleging the Trust was not paying its debts as they became due and therefore they are entitled to the entry of an order for relief against the Trust pursuant to § 303(h)(1) of the Bankruptcy Code. The Involuntary Petition was vigorously contested by the Trust. The parties embarked on extensive discovery, and it was not until July 3, 1986, on the eve of the trial, which has been postponed several times, that the Trust consented to the entry of an order for relief under Chapter 11 of the Bankruptcy Code. The Order for Relief specifically provided, however, that the Debtor's right to seek imposition of sanctions against the petitioning creditors, including Mills and Smoak, pursuant to § 303(i) of the Bankruptcy Code for the alleged bad faith filing of the involuntary petition shall be preserved. This was done because of the contention of the Debtor that neither Mills, NATIA, Smoak, nor CRI, are creditors of the Trust. The request for imposition of sanctions filed by the Debtor is currently the subject of a pending adversary proceeding which is yet to be tried. This is the factual scenario which forms the background of the objection to the claims of Mills and Smoak, the matter under consideration. The facts relevant to the resolution of the issues outlined earlier as developed at the final evidentiary hearing can be summarized as follows:

■ George E. Mills (Mills) is a certified public accountant who was employed by CRI and placed in charge of finances and accounting of the affairs of CRI between December 1982 and April 1984 when he resigned. His immediate supervisor was Mr. Trowbridge who was the sole stockholder and principal officer of CRI. In December 1982 the Debtor entered into an agreement with CRI, according to which CRI was placed in charge of marketing time-share units on behalf of the Debtor. Under this arrangement, North American Title Insurance Agency, Inc. (NATIA), was the closing agent for sales of the time-share units, an entity which was also controlled by Trowbridge. Ms. Smoak was the vice-president of NATIA and was in charge of its day-to-day operations. It appears that the original Trustees, McHale and McConnell, were fired on August 27, 1984, by the major beneficiary of the Trust, Club Baha, although according to Mills, they were not fired but resigned and their resignation was not to be effective until October 1, 1984. (Claimants' Exh. No. 3). Be that as it may, there is no question that McHale and McConnell resigned and were replaced by the new Trustees, Michael Glanz and Sylvia Steeves.

In late August, Mills received a telephone call from one of the original Trustees, McHale, and was requested to prepare a final report and accounting for McHale and McConnell, the original Trustees. Pursuant to instruction Mills prepared a document entitled, "Captran Creditors Trust Statement of Financial Position at August 27, 1984" (Debtor's Exh. No. 1). The preparation of this report forms the basis of the claim of Mills for which he is now asserting that he is entitled to have his claim allowed in the amount of $3,499.

It is without dispute that the Circuit Court in and for Lee County entered an order on September 14, 1984, and directed the former Trustees, McHale and McConnell to file with the Circuit Court a final report and accounting of their trusteeship (Claimants' Exh. No. 4). Thus, it was clearly a duty imposed on the former Trustees to file such report. Of course, ordinarily the cost of preparation of such report is

a properly chargeable item to the beneficiaries of the Trust, provided the report was properly prepared; the charges for the report were reasonable; and, of course, represented measurable benefit and value to the Debtor and assisted the successor Trustees to discharge their duties under the Trust. This brings forth the prime and the most important contention of the Debtor which is that Mills' report is totally worthless, presented no benefit and value to the Debtor and was done solely to exonerate the former Trustees from their alleged wrongdoings committed by them during their trusteeship.

Mills concedes that the Final Report and Accounting prepared by him was merely a compilation of previously prepared, mostly outdated records. He also admits that it was not prepared with any compliance with the generally accepted accounting principles. The fact of the matter is that the so-called Final Report and Accounting was not even signed by Mills, which is clearly an absolute requirement of the accounting profession. Thus, any report submitted by an accountant, reflecting the financial condition of a client must be signed by the accountant who prepared the report whether or not the report is audited. Moreover, there is undisputed evidence in this record to establish that the report was not much value and, in fact, contained actual inaccurate factual statements. As a result, Mills was charged with professional incompetence and misconduct by the Professional Board of Regulation Board of Accountancy (Debtor's Exh. No. 2). In this administrative proceeding of a Complaint filed by the principal of Club Baha, the beneficiary holding the vast majority of the beneficial interest, Mills entered into a stipulation with the Board and consented to the imposition of a fine and to the suspension of his license as a certified public accountant for two years, which, however, according to him, was reduced to one year. Be that as it may, it is clear that the report was not the end product of a professional, for which Mills charged professional rates. Moreover, it is clear that for this reason, the report represented hardly any measurable benefit and value to the Debtor, and for this reason, Mills' compensation, while allowable, should be drastically reduced.

■ This leads to the consideration of the objection of the Debtor to the claim of Ms. Smoak. As noted earlier, Ms. Smoak was the person in charge of the business of NATIA which was acting as closing agent for the sale of time-share units initially sold for CRI, and later on after a Trust was formed, by CRI acting as selling agent for the Debtor. As noted earlier, NATIA is also controlled by Trowbridge, the principal of CRI, and he is also the sole stockholder and principal officer of NATIA. Ms. Smoak was employed by NATIA from January 1982 until August 3, 1984. On August 31, 1984, she claims that she was requested by McConnell, one of the former Trustees, to prepare copies of closing documents for Gerbowski, who requested the information on behalf of Club Baha, the beneficiary of the Trust holding by far the largest interest in the Trust. According to her statement, she started to work on this task in late August, but resigned on August 27 when she learned that McConnell was no longer a Trustee. There is no evidence that Gerbowski requested Ms. Smoak in her capacity as a private individual to furnish him any of the records concerning the sold and unsold time-share units and Gerbowski assumed at the time he talked to her in the office of NATIA that she was still an officer of NATIA, and the closing agent. Ms. Smoak kept no time records of any sort whatsoever, and she has no back-up documents to substantiate the time she had allegedly spent for the services which forms the basis of her claim, let alone to substantiate that her services were required by the Debtor.

Based on the foregoing, this Court is satisfied that she failed to establish with the requisite degree of proof that she has any claim whatsoever for any amount.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the objection to Claim No. 18 of George E. Mills be, and the same is hereby, sustained, and the claim is allowed, but reduced to $500.00. It is further

ORDERED, ADJUDGED AND DECREED that the objection to Claim No. 20 of Joan Smoak be, and the same is hereby, sustained, and the claim is disallowed in toto.

DONE AND ORDERED.